IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


KENNETH LEE WEINBERG,

    Plaintiff,

vs.                                          Case No. 4:09cv202-RH/WCS

PAM HODGES, SERGEANT NEWSOM,
and MAURICE LANGSTON,

    Defendants.

                                     /


## REPORT AND RECOMMENDATION

Plaintiff, a *pro se* inmate, initiated this civil rights action against three Defendants on May 18, 2009. Defendants Pam Hodges, Sergeant Newsom, and Maurice Langston were employed at the Wakulla County Jail, Doc. 1. Plaintiff amended his complaint on September 11, 2009. Doc. 11. Service of the amended complaint was directed and at the conclusion of the discovery period, Defendants filed a motion for summary judgment. Doc. 28. Plaintiff was advised of his obligation under Rule 56 to respond to the motion, doc. 29, and Plaintiff has filed his response. Doc. 38.

**Allegations of the Amended Complaint, doc. 11**

Plaintiff complains that while he was detained at the Wakulla County Jail, Defendants failed to provide hearing aid batteries. Plaintiff asserts that this denied him meaningful access to the court and was "unable to adequately prepare for trial." *Id.*, at

7. Plaintiff's request to allow his family to supply batteries for his hearing aid was also denied. *Id.*, at 8. Plaintiff contends he often left the court "not knowing what the court's ruling was" and was prejudiced in court proceedings and trial. *Id.*, at 9. Plaintiff alleged that at one point, he even "requested the court to order the jail to furnish plaintiff with hearing aid batteries." *Id.*, p. 10. The state court judge denied Plaintiff's motion. *Id.* Plaintiff contends that this "prejudice from not being able to hear was a major factor" presumably in the outcome of his criminal trial. *Id.*, at 11.

Plaintiff acknowledges he was held in the Wakulla County Jail from April 27, 2003, until October 29, 2004, when he was transferred to Leon County Jail. Doc. 11, pp. 7, 11. He returned to Wakulla County Jail on May 12, 2005, until July 8, 2005. *Id.* Plaintiff against filed grievances about the denial of hearing aid batteries in May, 2005. *Id.*, at 11, 12.

Plaintiff asserts that denial of hearing aid batteries violated the Americans with Disabilities Act (herein after ADA), and prevented Plaintiff from adequately preparing for trial. *Id.*, at 12. Plaintiff also contends that Defendants were motivated to deny him batteries "because Plaintiff tried to expose the medical department for failing to provide medical care to prisoner Vann Wilds who died . . . ." *Id.* Plaintiff contends he denial was a "vendetta against" him by the Sheriff, who is not a named Defendant in this case. *Id.* Plaintiff also claims that Defendant Langston was deliberately indifferent to the need to train and supervise his subordinates. *Id.,* at 13. Plaintiff alleges that all three Defendants actions "were malicious and sadistic and their decision to deny the hearing aid batteries was the direct result of retaliation for Plaintiff's grievances on the medical departments failure to provide prisoner Vann Wilds medical care before his death." *Id.*

Plaintiff seeks compensatory and punitive damages as well as a declaratory judgment. *Id.*, at 14. He sues the three Defendants in their official capacities and individually. *Id.*, at 13.

**Motion for summary judgment, doc. 28**

Defendants assert that Plaintiff's ADA claims cannot proceed against the three Defendants because the Act does not create an action against individuals. Doc. 28, p. 1. Furthermore, Defendants contend that they "had no involvement in or authority over decisions with respect [to] what items, including hearing aid batteries, were supplied for inmates housed in the Wakulla County Jail." *Id.*, at 2. *Inter alia,* Defendants contend that they took no actions that violated Plaintiff's rights, and that Plaintiff "cannot maintain an official capacity claim against any Defendant named . . . as a matter of law." *Id.*, at 1-2.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Plaintiff was a pre-trial detainee at the time of the events at issue. Doc. 28, p. 3; doc. 1. Defendant Pam Hodges is the medical supervisor at the Wakulla County Jail. Hodges' affidavit, ¶ 2 (doc. 28-1). She is a Licensed Practical Nurse, as well as being certified as a law enforcement officer and a correctional officer with the rank of Lieutenant. *Id.*

Plaintiff submitted two medical grievances dated September 9, 2004, and September 13, 2004, asking for hearing aid batteries. Doc. 28, p. 4; Hodges affidavit, ¶ 6; *see also* doc. 28-2, p. 4-5. The responses on both grievances advised Plaintiff that the Jail does not "supply hearing aid batteries." *Id.* Jail policy, then and now, provides that hearing aid batteries may be "brought into the jail by the inmate and/or provided by friends or relatives of the inmate." *Id.*; *see also* Newsome affidavit, ¶ 6 (doc. 28-3). When family or friends provide hearing aid batteries, "they are placed in the inmate's property and provided to the inmate upon request." Hodges affidavit, ¶ 6. If Plaintiff "did not have hearing aid batteries in his property, there were no available batteries available to be provided him." *Id.* Defendant Newsome recalls advising Plaintiff at one time that "hearing aid batteries were considered a security risk" although it was not his personal decision that they were a risk. Newsome affidavit, ¶ 6.

None of the three named Defendants in this case had policymaking authority with respect to the operation of the Jail. Hodges affidavit, ¶ 2; Newsome affidavit, ¶ 2. Sheriff David Harvey has final policymaking authority over matters concerning the Jail. Langston affidavit, ¶ 5. None of the Defendants had any involvement or authority over decisions concerning items to be supplied to inmates, including hearing aid batteries.

Hodges affidavit, ¶ 8; Newsome affidavit, ¶¶ 4, 5. None of the Defendants had any involvement in Plaintiff's transfer from the Wakulla County Jail. Hodges affidavit, ¶ 11; Langston affidavit, ¶ 11 (doc. 23-2); Newsome affidavit, ¶ 10.

Neither Defendant Hodges nor Newsome had any knowledge of a "vendetta" against Plaintiff by the Sheriff or Major Crum. Hodges' affidavit, ¶ 10; Newsome affidavit, ¶ 9. Defendant Hodges has no personal knowledge of any grievances Plaintiff filed concerning the medical care or treatment of other inmates housed at the jail. Hodges' affidavit, ¶ 9. Defendant Newsome, as a correctional officer, had no involvement in reviewing or responding to medical grievances submitted by inmates. Newsome affidavit, ¶ 8. Likewise, Defendant Hodges does "not receive inmate grievances that do not involve medical issues." Hodges' affidavit, ¶ 5. Defendant Newsome has no knowledge of "ever receiving a written request from Plaintiff . . . with respect to any items contained in his property maintained at the Wakulla County Jail." Newsome affidavit, ¶ 7.

Defendant Langston was not the jail administrator while Plaintiff was detained in the Wakulla County Jail. Langston affidavit, ¶ 5. Defendant Langston had been the administrator in the early 1990's, but since that time, Defendant Langston has not had any involvement with the operation of the jail. Langston affidavit, ¶¶ 5, 8. He currently is employed as administrator with the Sheriff's Offices, but his "duties include, but are not limited to, animal control, emergency management and providing public information." *Id.*, at ¶ 2. Even during the time Defendant Langston was employed as jail administrator, he had no policymaking authority. Langston affidavit, ¶ 5. Defendant Langston has no personal knowledge of Plaintiff or any allegation from the complaint,

including any vendetta, and has no involvement or authority over any aspect of the jail. *Id.*, at ¶¶ 4, 7, 8, 10.

Plaintiff's medical history indicates Plaintiff has hearing difficulties and wears hearing aids. Doc. 38, p. 21; *see also* Plaintiff's exhibit 5, doc. 38-4, p. 36, Plaintiff's exhibit 6, doc. 38-4, pp. 38-39, Plaintiff's exhibit 7, doc. 38-4, p. 41. There is no dispute as to that fact.

Plaintiff asserts that "Defendant Newsome refused to check Plaintiff's personal property to see if hearing aid batteries were in it." Doc. 38, pp. 9, 11. Plaintiff states that Defendant Newsome "denied several verbal and one written request" concerning the batteries, and Plaintiff points out that this Defendant "admitted that he told plaintiff hearing aid batteries were a security risk." Doc. 38, p. 11. Plaintiff asserts that Defendant Newsome "would not allow Plaintiff's family to send him hearing aid batteries, because of an alleged security risk." *Id.*, at 13. When Plaintiff asked him to explain the security risk, Defendant Newsome said that sending batteries would require staff to open the packages and ensure they had not been tampered with, and Plaintiff replied that the batteries are packed in clear plastic and are sealed, so it would be an easy determination. Doc. 38, pp. 39-40.

Plaintiff states that he "was not able to adequately participate in church services held in the county jail, which was authorized by Sheriff Harvey." Doc. 38, p. 13. "Plaintiff was unable to hear the TV for over two years, he understood less that [sic] 100 words during that time period." *Id.* Plaintiff contends he could not "adequately communicate with his attorney in private because if counsel spoke in a quiet tone plaintiff could not hear him." *Id.*

Plaintiff clarifies that he "is not saying the outcome of his trial would have been different" if he had received hearing aid batteries, but he contends he was prejudiced in his "ability to prepare an adequate defense." Doc. 38, p. 14. Plaintiff also asserts that he could not adequately assist his attorney, while he still had counsel, because he could not hear "false statements" being made. *Id.*, at 14.

Plaintiff also asserts he was "denied medical care for long periods of time for several serious, painful medical conditions." Doc. 38, p. 15. Plaintiff says his grievances were never answered. *Id.* Plaintiff indicates that he suffered from a "urinary track infection" which led to a more serious infection (not identified), but which Plaintiff states was "cured" within 30 days of his October 29, 2004, transfer to the Leon County Jail. Doc. 38, pp. 23-24. Defendant Hodges's response to Plaintiff's interrogatories states that "Plaintiff was not denied medical care for an alleged urinary tract infection. Plaintiff was seen for this alleged condition on 7/26/04, on 9/13/2004 and 10/28/04. Urinalysis was negative." Doc. 38-1, p. 28. Plaintiff also contends he was denied care in retaliation for Plaintiff's having threatened "to expose the Wakulla County Jail medical department in the medical neglect death of" another prisoner, Vann Wilds. Doc. 38, pp. 15, 29.

Plaintiff submitted a sick call request on September 13, 2004, complaining that his "medical situation" was getting worse. Doc. 38-4, p. 43. The response stated that Plaintiff came to medical and this urine was checked in accordance with his complaint of having an "infection in [his] urine track" and the results "came up negative." *Id.*

Plaintiff contends that he sent a written request to Defendant Newsome on September 4, 2004, "asking him to check his property to see if his family had sent him hearing aid batteries." Doc. 38, p. 21, *citing* Plaintiff's exhibit 4. Plaintiff stated that the

request was denied.  Doc. 38, p. 21.  A copy of that request form was filed by Plaintiff as Exhibit 4 and Plaintiff stated:

> . . . I request that you look in my property and see if I have hearing aid batteries in my property that my family sent to me when I was sent my hearing aids.  Medical refuses to supply them and you have previously told me that the batteries are a security risk, which is totally not correct.  I can't hear without the hearing aids and I am representing myself in court.  I can't understand what is being said. Remedy, release my batteries for my hearing aids.

Doc. 38-4, p. 34.  The grievance was submitted to "Sgt. Newsom" [sic] and the response, signed with the initials DN and the number 386 states, "If medical says needed, we will[,] otherwise – no."  *Id.*

Plaintiff asserts that he filed a medical grievance on October 11, 2004, stating that he had tried to get hearing aid batteries sent in, but was "told by Sgt. Newsome that" he would have to get batteries "through medical, and medical will not get them."  Doc. 38, p. 26.  The response to the grievance, signed by Defendant Hodges, stated: "We do not supply hearing aid batteries to inmates."  *Id.*, at 26.  A copy of this grievance was filed as Plaintiff's exhibit 3.  Doc. 38-4, p. 32.  The grievance, dated by Plaintiff on October 11, 2004, contains the following statements:

> On 10/11 filed [sic] out request for batteries for hearing aids I need this for Court on 10-13-04.  I have filled out 4 medical slips and request forms in the last 2 mo.  I am representing myself in court and can't hear the judge.  I have tried to get them sent in but have been told by Sgt. Newsom [sic] that I have to get them through medical, and medical will not get them.

Doc. 38-4, p. 32.  The response, signed by Defendant Hodges on October 12th, states "We do not supply hearing aid batteries to inmates."  *Id.*  Also on October 1, 2004,

Plaintiff requested medical attention to have his ears cleaned. Plaintiff's exhibit 8, Doc. 38-4, p. 44. The response indicates "Debrox" on the same date.[1] *Id.*

Plaintiff acknowledges that he did not have any "hearing aid batteries in his pocket on the day of his arrest on April 27, 2003" because Plaintiff "was from Mississippi and did not have immediate access to a friend who could bring him hearing aid batteries . . . ." Doc. 38, p. 27.

Plaintiff submitted copies of the documentary evidence he contends supports his claims. One document is an Inmate Sick Call Request dated by Plaintiff September 9, 2004. Doc. 38-1, p. 5. Plaintiff stated, "I need 4 batterys [sic] for my hearing aids. I need them soon I have to go to court." *Id.* The response, dated September 10, 2004, states "We do not supply batteries" and is signed by a staff member who is not a Defendant in this case. *Id.* On September 13, 2004, Plaintiff submitted another Inmate Sick Call Request, stating "This is my 3rd request in 2 wks for batteries for my hearing aids. I have to go to court on the 15th and will need to be able to hear the judge. I will ask the judge to order you to do this if I have to." *Id.* The response provided by Defendant Hodges on September 14, 2004, states: "We do not supply hearing aid batteries." *Id.*

**Legal Analysis**

    **Official Capacity Liability of all Defendants and claims again Defendant Langston**

To be liable in their "official" capacities, as opposed to their individual capacities, Defendants would have to have final policymaking authority as to the matter giving rise

---

[1] Debrox is a nonprescription liquid eardrop medication that can be used to remove earwax buildup and clean the ears.

to the claim.  Little v. City of North Miami, 805 F.2d 962, 965 (11th Cir. 1986) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978)).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005), *citing* Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997).

Plaintiff concedes that he cannot "maintain an official capacity claim against any named Defendants as a matter of law."  Doc. 38, p. 6.  Plaintiff also concedes that Defendant Langston was improperly named and he voluntarily dismisses his claim against that Defendant.  Accordingly, this case proceeds against Defendants Newsome and Hodges in their individual capacities only.

**ADA Claim**

Plaintiff's claim for violations of the Americans with Disabilities Act is brought under Title II, 42 U.S.C. § 12131 *et seq.*  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132.  "Public entity" is defined to include "any State or local government" or any "department, agency, special purpose district, or other instrumentality of a State or States or local government."  § 12131(1).  County "jails are public entities covered by the ADA."  Dukes v. Georgia, 428 F.Supp.2d 1298, 1322 (N.D.Ga., 2006), relying on Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (holding that "public entity" includes state prisons).

There is no individual liability under the ADA. Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007), *citing* Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) (holding that the Act does not provide for individual liability, only for employer liability); *relied on in* Emmett v. Walker, 2008 WL 2755848, *5 (S.D. Ga., 2008) (holding that state prisoners claims against individual defendants should be dismissed and the claim proceed against the State of Georgia, and the Department of Corrections); Scott v. Campbell, 2009 WL 3028306, *4 (N.D. Fla., 2009) (noting that "Title II of the ADA does not apply to a private entity."). Accordingly, summary judgment should be granted in favor of the three individual Defendants with respect to the ADA claims.[2]  **Access to Court Claim**

Plaintiff contends that he was denied access to court by the denial of his hearing aids, and that he suffered "actual injury" in that he could not adequately assist his attorney, while he still had counsel, because he could not hear "false statements" being made. *Id.*, at 14. Plaintiff has clarified that he "is not saying the outcome of his trial would have been different" if he had received hearing aid batteries, but he contends he was prejudiced in his "ability to prepare an adequate defense." Doc. 38, p. 14. At some

---

[2] Plaintiff's ADA claim also fails because Plaintiff did not *allege* that he was denied any benefit, program, or service of the Wakulla County Jail by reason of his disability. He only claimed that not receiving hearing aid batteries denied him the ability to hear fully in court and prejudiced him in court proceedings. In response to summary judgment, Plaintiff now seeks to show that he could not hear the television while in jail and could not participate in church services, *see* doc. 38, p. 13, but those were not part of Plaintiff's claims. Even if they were, it does not appear that Plaintiff exhausted such a claim or alerted Defendants in any of his grievances that without his hearing aids he could not hear the television or participate in church services. Plaintiff's grievances only assert that he need the hearing aids for court. Furthermore, Plaintiff is no longer detained at the Wakulla County Jail, but incarcerated in the State of Florida's Department of Corrections. Thus, any request for injunctive relief, as opposed to monetary relief, is moot.

unidentified point in the criminal proceedings, Plaintiff decided to represent himself. Plaintiff contends his First Amendment rights were violated because he could not adequately assist his counsel at an earlier stage in his criminal proceedings.

A claim that Plaintiff was unable to properly defend himself due to his hearing difficulties is a challenge to Plaintiff's conviction and is barred by <u>Heck v. Hujmphrey</u>, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Any challenge to a criminal conviction must be brought through a habeas petition as a civil rights case cannot undermine a valid conviction. *Id.*

Plaintiff's attempt to avoid the <u>Heck</u> bar by asserting that the outcome of his trial would not have been any different had he had hearing aid batteries defeats his access to courts claim. Plaintiff must show "actual injury" to state a First Amendment claim of denial of access to courts. <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996). Plaintiff also must show that he was impeded in the presentation of a non-frivolous claim in court. *Id*., at 352-354, 116 S. Ct. at 2181. Moreover, "[t]he injury which the inmate must demonstrate is an injury to the right asserted, i.e. the right of access." <u>Bass v. Singletary</u>, 143 F.3d 1442, 1445 (11th Cir. 1998). Defendants are entitled to summary judgment on this claim. For these reasons, this claim is frivolous.

**Retaliation Claim**

It is undisputed that the denial of hearing aid batteries was due to jail policy. It is also undisputed that *if* Plaintiff had hearing aid batteries in his property, he would have been provided them. Plaintiff has presented no competent evidence that the batteries were in his property. Moreover, Plaintiff has come forward with no evidence to show that any Defendant was aware of any of his protected First Amendment activities. There is no evidence which provides a causal connection between Plaintiff's exercising

protected First Amendment rights and the denial of hearing aid batteries. Plaintiff has no evidence that others were provided batteries but he was not. For all of these reasons, Plaintiff has failed to prove his retaliation claim.

**Equal Protection Claim**

While Plaintiff alleged in the complaint that his equal protection rights were violated, doc. 11, p. 14, there were no facts alleged in the complaint to show that Plaintiff was treated any differently than any other detainee on the basis of age, race, sex, or other constitutionally protected status. Moreover, Plaintiff has presented no evidence that other inmates were treated any differently or others given hearing aid batteries when Plaintiff was not. Summary judgment should be granted in favor of the Defendants on this claim.

**Due Process Claim**

As a pretrial detainee who has not yet been convicted, Plaintiff's claim arises under the Fourteenth Amendment; whereas, the Eighth Amendment provides protection for a convicted prisoner. Marsh v. Butler County, Ala., 268 F.3d 1014,1024 n.5 (11th Cir. 2001). Nevertheless, the standard for claims based on the lack of basic necessities is the same under either the Fourteenth or Eighth Amendments. Hamm, 774 F.2d at 1574.

To prevail on his claim under either Amendment, Plaintiff must satisfy an objective component and a subjective component. Farmer v. Brennan, 511 U.S. 825, 836, 114 S.Ct. 1970, 1983, 128 L.Ed.2d 811 (1994). The objective component requires courts to consider "contemporary standards of decency," to determine whether Plaintiff has been deprived of "the minimal civilized measure of life's necessities," Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399. Moreover, the challenged deprivation must be "extreme

. . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (citations and quotation marks omitted). The Constitution does not require that places of incarceration be comfortable. Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 2401, 69 L.Ed.2d 59 (1981). All that is required is that prisoners be provided reasonably adequate food, clothing, shelter, medical care, and be safely housed. Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir.), *cert. denied*, 475 U.S. 1096 (1986).

The undisputed evidence is that Defendant Hodges was acting pursuant to a policy that hearing aid batteries were not provided by the jail. Plaintiff received that information numerous times. Plaintiff seeks sues Defendant Newsome for not searching through Plaintiff's property, yet Plaintiff's testimony is that he did not have any hearing aid batteries with him when he was arrested on April 27, 2003, and Plaintiff further explained that he "was from Mississippi and did not have immediate access to a friend who could bring him hearing aid batteries." Plaintiff has not shown that any friends or family subsequently provided batteries that could be given to Plaintiff, and Plaintiff's testimony about his conversation with Defendant Newsome revealed that Plaintiff was aware the property could be sent, searched, and given to him. Plaintiff claimed in the complaint that his request to allow his family to supply batteries for his hearing aid was denied, yet Plaintiff has provided not evidence to show that he made a request that was denied, or that family or friends attempted to send batteries to him

which were refused.  There was no need, therefore, for Defendant Newsome to look through Plaintiff's property, and Plaintiff knew it when he brought this claim.  This claim is frivolous.

Moreover, the inability to use hearing aids was no doubt an inconvenience, but it was not a due process or equal protection violation.  It was simply part of being detained in jail.

In addition, Plaintiff has not provided any evidence showing that Defendant Hodges failed to treat any "serious" medical need.  The evidence reveals Plaintiff was treated, and there is no evidence that any delay caused other problems or exacerbated Plaintiff's medical condition.  Plaintiff broadly claims that he suffered from urinary track problems, and he alleges that this led to a more serious infection, yet Plaintiff has presented no evidence to support that claim.  The medical testing for infection was negative.  Plaintiff has not shown any denial of medical care by Defendant Hodges, nor has he shown that he suffered from a serious medical need.

Furthermore, Plaintiff states he was "cured" within 30 days of his October 29, 2004, transfer to the Leon County Jail and away from Wakulla County Jail.  Doc. 38, pp. 23-24.

Finally, though it was not raised by Defendants, most of Plaintiff's claims are barred by the four year statute of limitations.  This case was initiated on May 18, 2009.  Doc. 1.  Many of the events alleged occurred in the fall of 2004, long before May 18, 2005, the first actionable date.

**Conclusion**

Accordingly, it is **RECOMMENDED** Defendants' motion for summary judgment, doc. 28, be **GRANTED** on all claims and that the order adopting this report and recommendation direct the Clerk of Court to enter judgment in favor of Defendants finding that this suit was frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

**IN CHAMBERS** at Tallahassee, Florida, on February 9, 2011.

    S/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**